DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Michael McClanahan, appeals from his convictions in the Summit County Court of Common Pleas of multiple offenses, including falsification, tampering with evidence, and two counts of felonious assault.[1] We affirm.
 {¶ 2} On March 7, 2004, at approximately noon, Luis Yanzanes was entering the Baho Convenient Store in Akron, when he inadvertently bumped into McClanahan, who was exiting through the same doorway. A minor verbal altercation ensued. Yanzanes had come to the store with his uncle, Roberto Yanzanny Torres,[2] who was already inside. When he observed the altercation, Torres walked over and tried to diffuse the situation. Torres asked McClanahan to leave, but McClanahan instead asked Torres to step outside. Torres refused and walked away. McClanahan left the store with the woman who had accompanied him there, and Torres and Yanzanes waited a few minutes before they left to give McClanahan time to leave the area.
 {¶ 3} McClanahan did not leave the area, however, but waited with his female companion in a parking lot across the street. Yanzanes exited the store first and heard a popping sound. He got into his uncle's car and waited for Torres to come out of the store. McClanahan fired three more shots, one of which struck Torres in the arm. The clerk at the store called police and paramedics to the scene. Torres was taken to the hospital and had surgery to remove a .25 caliber bullet from his arm.
 {¶ 4} Witnesses to the shooting told the police that, after firing several shots from the parking lot across the street, the shooter and his female companion headed toward a nearby alley. While the officers were heading in that direction, a man who apparently lived nearby approached them and told them that his neighbor was always shooting guns in his backyard and pointed toward the neighbor's house. The officers went to investigate and discovered that the house was actually two apartments and that neither of the individuals in the downstairs apartment matched the witnesses' description of the shooter.
 {¶ 5} The officers went to the upstairs apartment and the door was answered by McClanahan. McClanahan initially allowed the officers to come in and answered their questions, although he gave them a false name and Social Security number. He later terminated the questioning and told the officers to leave. While the police secured the area outside, they found several .25 caliber shell casings scattered around the yard and on the porch. Communications with officers at the scene of the shooting confirmed that the shell casing found at McClanahan's residence were the same brand and caliber as those found at the scene of the shooting.
 {¶ 6} When his mother arrived at the scene, McClanahan came outside and Yanzanes, who was waiting there with the police, positively identified him as the shooter. McClanahan and his girlfriend were arrested and, after securing a search warrant, police officers searched their apartment. They found, among other things, several .25 caliber shell casings and a box of .25 caliber bullets. A .25 caliber, loaded handgun was found hidden six feet down inside of the heating duct in one of the bathrooms. One shot was in the chamber, ready to be fired.
 {¶ 7} Following their arrest, gunshot residue tests were performed on both McClanahan and his girlfriend. Each test confirmed the presence of gunshot residue on their hands. Following a jury trial, McClanahan was convicted of multiple offenses, including tampering with evidence and two counts of felonious assault.
 Assignment of Error I
"The trial court erred in sentencing appellant to [more] than the minimum sentence and to consecutive terms of imprisonment in violation ofBlakeley v. Washington, 124 S.Ct. 2531, (June 24, 2004)."
 {¶ 8} As his first assignment of error, McClanahan contends that the trial court violated the holding of the United States Supreme Court inBlakely v. Washington, (2004), 542 U.S. ___, 159 L.Ed.2d 403 when it imposed his sentence. This Court has held, as have several other appellate districts, that Blakeley does not apply to Ohio's statutory sentencing scheme. See, e.g., State v. Rowles, 9th Dist. No. 22007,2005-Ohio-14; State v. Scheer, 158 Ohio App.3d 432, 2004-Ohio-4792;State v. Hill, 8th Dist. Nos. 84846 84887, 2005-Ohio-1501, at ¶ 78;State v. Curlis, 6th Dist. No. WD-04-032, 2005-Ohio-1217, at ¶ 20; Statev. Hughett, 5th Dist. No. 04CAA06051, 2004-Ohio-6207; State v. Berry,
12th Dist. No. CA2003-02-053, 2004-Ohio-6027. McClanahan has failed to even argue that we should reconsider the reasoning of those cases. Consequently, his first assignment of error is overruled.
 Assignment of Error II
"The trial court erred in dismissing a juror for cause without putting on the record the basis for the excusal."
 {¶ 9} McClanahan next challenges the trial court's dismissal for cause of juror number nine. He does not challenge the sufficiency of the trial court's reason for dismissing the juror, but instead argues that the trial court erred in failing to articulate a reason for the dismissal. This argument is not supported by the record.
 {¶ 10} During voir dire, one of the prosecutors moved to dismiss juror number nine for cause and explained that she had prosecuted that juror's son for aggravated murder, that the son was convicted, that he had been charged with a capital offense but had received a life sentence, and that juror number nine had testified as a witness during the mitigation phase of his son's trial. Over McClanhan's objection to dismissing juror number nine on this basis, the trial judge granted the state's motion to dismiss the juror for the reason already stated on the record, and stressed that she was not going to allow that juror to "poison the entire panel."
 {¶ 11} Because the trial court did put its reason for dismissing this juror on the record, McClanahan's argument is unfounded and his second assignment of error is overruled.
 Assignment of Error III
"The trial court erred in admitting the hearsay testimony of non-testifying individuals in violation of Crawford v. Washington, 124 s.ct. 1354 (March 8, 2004) and the appellant's right to confrontation."
 {¶ 12} Through his third assignment of error, McClanahan asserts that the trial court admitted hearsay testimony in violation of his constitutional right to confront witnesses against him, as set forth inCrawford v. Washington (2004), 541 U.S. 36, 158 L.Ed.2d 177. Specifically, when one of the police officers was explaining why the investigation proceeded to McClanahan's address, he testified that as he and another officer were heading down the alley near the parking lot where the shots had been fired, an unidentified male approached them and stated that he had a neighbor who was "shooting his gun off" all the time and then pointed in the direction of McClanahan's residence. McClanahan asserts that he had a constitutional right to confront that unidentified male witness and that, without an opportunity to cross-examine him, the hearsay statement was inadmissible under Crawford. We disagree.
 {¶ 13} In Crawford v. Washington, the United States Supreme held that the Confrontation Clause bars the admission of "testimonial hearsay" unless the declarant is unavailable and the accused has had a prior opportunity to cross-examine him. Id. at 68-69. The Crawford court drew a distinction between testimonial and non-testimonial hearsay and limited its holding to "testimonial" hearsay. See id. at 68. Thus, unless the statements of the unidentified male in this case qualify as "testimonial," Crawford does not impact their admissibility.
 {¶ 14} Although the Crawford Court declined to "spell out a comprehensive definition of `testimonial,'" id., it provided examples of those statements at the core of the definition, including prior testimony at a preliminary hearing or other court proceeding, as well as confessions and responses made during police interrogations. See id. at 51-52, 68. With respect to the last example, the Court observed that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." Id. at 51. As one court observed, the "types of statements cited by the Court as testimonial share certain characteristics; all involve a declarant's knowing responses to structured questioning in an investigative environment or a courtroom setting where the declarant would reasonably expect that his or her responses might be used in future judicial proceedings." United Statesv. Saget (C.A.2, 2004), 377 F.3d 223, 228, citing Crawford at 53, fn. 4.
 {¶ 15} It has been held that the testimony of a police officer that an unidentified declarant shouted, "Gun! Gun! He's got a gun!" and then pointed at the defendant did not constitute testimonial hearsay and, therefore, its admissibility was not impacted by the Crawford holding. See United States v. Griggs (S.D.N.Y. 2004), 65 Fed.R.Evid.Serv. 1109. We see no reason to distinguish the statement at issue here. Although the unidentified declarant spoke to police officers in the course of a police investigation, his statement was not made in response to any questioning by police, but was made by an apparent witness who voluntarily approached the police officers and offered information.
 {¶ 16} Moreover, even if we were to conclude that the statement at issue was "testimonial" because it was made to police officers during their investigation of the crime scene, the statement would not fall within the holding of Crawford because the state did not offer it to prove the truth of the matter asserted, i.e., that guns were often fired outside McClanahan's residence. The Crawford Court made clear that "[t]he [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Id. at 59, fn.9, citing Tennessee v. Street (1985),471 U.S. 409, 414, 85 L.Ed.2d 425. The unidentified declarant's statement was not introduced to prove that McClanahan had repeatedly fired guns in his backyard, for he was not even charged with such a crime and McClanahan himself testified that he had fired guns at his residence before. This evidence, coupled with evidence that other witnesses had already pointed the officers in the general direction of McClanahan's residence, was offered to explain why the police officers directed their investigation toward McClanahan's residence.
 {¶ 17} Consequently, the trial court did not violate McClanahan's constitutional right to confront witnesses against him, as explained inCrawford v. Washington, supra. The third assignment of error is overruled.
 Assignment of Error IV
"The trial court erred in sentencing appellant to consecutive sentences."
 {¶ 18} McClanahan next asserts that the trial court failed to comply with the requirements of R.C. 2929.14(E)(4) when it imposed consecutive sentences for his convictions of felonious assault and tampering with evidence.
 {¶ 19} "When imposing consecutive sentences, a trial court must make its findings under R.C. 2929.14(E) and give reasons supporting the findings under R.C. 2929.19(B)(2)(c) at the sentencing hearing." Statev. Brooks, 103 Ohio St.3d 134, 2004-Ohio-4746, at ¶ 14, citing State v.Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, paragraph one of the syllabus. The findings required include a finding that consecutive sentences are "necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public [.]" R.C. 2929.14(E)(4).
 {¶ 20} In addition to the required findings set forth above, R.C.2929.14(E)(4) also requires a trial court to make an additional finding that one of three statutory factors applies including that:
"(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct."
 {¶ 21} A trial court is not required "to utter any `magic' or `talismanic' words, but it must be clear from the record that the court made the required findings." State v. White (1999), 135 Ohio App.3d 481,486.
 {¶ 22} The record reflects that the trial court stated at the sentencing hearing its findings that consecutive sentences were necessary to protect the public, that multiple sentences were not disproportionate, and that the harm was so great or unusual that a single term would demean the seriousness of the conduct. The trial court spoke to McClanahan at some length about his lack of any rational reason for firing his weapon at two individuals who had done nothing to him, and that he could have injured many other individuals, even a child getting out of a car, by his senseless act. It is clear from the trial court's statements at the sentencing hearing that it made the findings required for imposing consecutive sentences under R.C. 2929.14(E)(4)(b). The fourth assignment of error is overruled.
 Assignment of Error V
"The convictions should be reversed because they are against the manifest weight of the evidence and because the evidence supporting them was insufficient as a matter of law to prove a conviction beyond a reasonable doubt."
 {¶ 23} McClanahan's final assignment of error is that his convictions were supported by insufficient evidence and that they were against the manifest weight of the evidence.
 {¶ 24} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that, construing the evidence in a light most favorable to the prosecution, reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Wolfe (1988), 51 Ohio App.3d 215, 216.
 {¶ 25} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citingState v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
 {¶ 26} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
"Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 27} McClanahan does not challenge the state's evidence on each and every element of the offenses of which he was convicted. Instead, he limits his argument to the state's evidence that identified him as the shooter. He contends that the state failed to establish beyond a reasonable doubt that he was the one who fired multiple .25 caliber shots at Torres and Yanzanes, one of which hit Torres in the arm. We disagree.
 {¶ 28} The state presented the testimony of two different witnesses to the shooting who positively identified McClanahan as the shooter. The clerk who was working at the Baho Convenient Store at the time of the incident testified that, although he did not know McClanahan or his girlfriend by name, he had seen both of them in the store on many prior occasions. He positively identified McClanahan as the one who was involved in the altercation with Yanzanes in the store and the one who had fired the shots from across the street. The clerk explained that, after hearing that a shot had been fired outside, he went to look because he found it hard to believe that someone was shooting a gun in broad daylight. He was able to see McClanahan fire three more shots, one of which hit Torres in the arm. The clerk testified that he was certain that the shooter was the same man that he had just seen in the store.
 {¶ 29} Torres, who was not wearing his eyeglasses during the incident, was not able to identify the person who fired the shots, but his nephew was. Yanzanes identified McClanahan shortly after the incident, when police took him to McClanahan's apartment, and he also positively identified McClanahan as the shooter when he testified at the trial. Yanzanes had seen McClanahan leave the store, walk across the street and fire several shots, one of which hit his uncle in the arm.
 {¶ 30} Both eye witnesses explained that, although the shooter was standing across the street when he fired the shots, he was definitely the same man whom Yanzanes had inadvertently bumped into the store. While the man was in the store, both witnesses had been close to him and had seen his face clearly.
 {¶ 31} Immediately after the shooting, several witnesses observed the shooter head in the direction of McClanahan's residence and they gave that information to the police who arrived at the scene. The police officers headed in that direction and found several shell casings, of the same caliber and brand as those used in the shooting, outside McClanahan's building. After the police obtained a search warrant, they searched McClanahan's apartment and found more.25 caliber shell casings, bullets, and eventually found a gun hidden deep inside the heating duct in the bathroom.
 {¶ 32} Following his arrest, McClanahan tested positive for the presence of gunshot residue on his hands. The state's witness explained that gunshot residue on the hands indicates that the individual had recently fired a gun, had handled a gun that had been recently fired, or was in close proximity to a gun that was fired.
 {¶ 33} The state also presented evidence that the gun found in the ductwork in McClanahan's apartment was loaded, with a live round in the chamber. Tests performed on the gun verified that it was operable. One of the state's forensic experts further testified that three of the four shell casings found at the scene of the shooting had definitively been fired from the gun found in McClanahan's apartment. The fourth shell casing lacked enough of the characteristics for the state's expert to say conclusively that it was fired from that same gun.
 {¶ 34} Although McClanahan testified that he had not left his apartment that day, the jury was not required to believe his self-serving testimony that was not corroborated by any other evidence and was, in fact, contradicted by much of the state's evidence. See State v.Mattison (1985), 23 Ohio App.3d 10, 14. Moreover, the state had presented overwhelming evidence that McClanahan was the shooter. Given the evidence before the jury, we cannot say that it lost its way in concluding that McClanahan was the man who had fired four shots at Yanzanny and Torres. Consequently, his convictions were not against the manifest weight of the evidence and were supported by sufficient evidence. The fifth assignment of error is overruled.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Slaby, P.J. Concurs.
[1] Because McClanahan focuses his challenges on his felonious assault convictions, we will likewise focus our discussion on those offenses.
[2] Although he apparently uses the surname "Yanzanny," we will refer to him as "Torres" for ease of distinguishing him from his nephew, who has a similar name.