DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
{¶ 1} Appellant, Gyles Keene, appeals from his convictions and sentence in the Lorain County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Appellant, his brother Gregory Keene, and Gregory's girlfriend Megan McGinnis were together on the evening of July 19, 2003, and into the early morning hours of July 20, 2003. Earlier in the day, appellant and his brother had been consuming alcohol. Upon returning home, the three then got into a 1991 black Acura Integra. A few moments later, tragedy ensued.
 {¶ 3} In the early morning hours of July 20, 2003, William Duncan witnessed the Integra crash while he was driving his own vehicle. Duncan called 911 and approached the scene almost immediately after the accident. At that time, he witnessed appellant's body near the driver's side of the car and Gregory's body pinned on the passenger's side of the vehicle. A short time later, Duncan discovered Megan's body which had been thrown clear of the car.
 {¶ 4} Lorain officers arrived on scene and attended to the car's occupants. Tragically, both Gregory and Megan were declared dead at the scene of the accident, both having suffered massive traumatic injuries. Appellant survived the accident, was treated on the scene, and was transported to a Cleveland hospital. The EMT who treated appellant noted that while treating him, the smell of alcohol on appellant's person was strong.
 {¶ 5} At the scene, officers surmised that the Integra had struck a van, swerved off the street, struck a tree stump, became airborne, rolled, struck a telephone pole, and ultimately came to rest on its roof. Following an investigation of the cause of the accident, appellant was charged with two counts of aggravated vehicular homicide in violation of R.C. 2903.06(A)(1)(a) and two counts of driving under the influence in violation of R.C. 4511.19(A)(1)/(A)(2). Prior to trial, the State dropped one of the driving under the influence charges.
 {¶ 6} On January 23, 2006, the matter proceeded to a jury trial. The State called numerous witnesses, but relied primarily on an accident reconstruction expert, Lieutenant Charles Veppert. Veppert concluded that appellant was driving the Integra, that Megan was in the rear of the vehicle, and that Gregory was the front passenger. At the conclusion of the State's case, appellant moved for acquittal. The trial court denied the motion and appellant then rested his case without presenting evidence. Appellant renewed his motion for acquittal which was again denied. The jury returned a guilty verdict on the remaining three counts in the indictment. Following a hearing, appellant was sentenced to an aggregate term of five years incarceration. Appellant timely appealed his convictions and sentence, raising three assignments of error for review.
 II. ASSIGNMENT OF ERROR I "THE VERDICT IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO." {¶ 7} In his first assignment of error, appellant argues that his convictions are against the manifest weight of the evidence and that the State produced insufficient evidence to support those convictions. This Court disagrees.
 {¶ 8} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600. "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." Id., citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, 279. Furthermore:
 "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus; see, also, Thompkins, 78 Ohio St.3d at 386.
In State v. Roberts, this Court explained:
 "[S]ufficiency is required to take a case to the jury[.] * * * Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. (Emphasis omitted).
Accordingly, we address appellant's challenge to the weight of the evidence first, as it is dispositive of his claim of sufficiency.
 {¶ 9} In determining whether a conviction is against the manifest weight of the evidence, an appellate court:
 "[M]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. Thompkins, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. Id. An appellate court must make every reasonable presumption in favor of the judgment and findings of fact of the trial court.Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Martin (1983), 20 Ohio App.3d 172,175; see, also, Otten, 33 Ohio App.3d at 340.
 {¶ 10} Appellant was convicted of two counts of aggravated vehicular homicide and one count of driving under the influence. R.C.2903.06(A)(1)(a) provides as follows:
 "No person, while operating or participating in the operation of a motor vehicle * * * shall cause the death of another * * * [a]s the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code[.]"
R.C. 4511.19 prohibits driving while under the influence of alcohol or a drug of abuse. On appeal, appellant challenges only one aspect of his convictions. Specifically, appellant argues that a finding that he was driving the car was against the manifest weight of the evidence. We disagree.
 {¶ 11} In support of its case, the State relied heavily upon the testimony of Lieutenant Charles Veppert. Without objection, Veppert was qualified as an expert in accident reconstruction. During his lengthy testimony, Veppert testified as follows. He received reports from numerous officers, witnesses, and coroners prior to beginning his reconstruction. Veppert then attempted to verify any of the facts contained in those statements to the extent that it was feasible to do so. The lieutenant then explained the process of accident reconstruction. During that process, one takes into account all of the forces at work on the vehicle in question, the injuries sustained by the occupants, the damage to the vehicle, the speed of the vehicle, and the location of the occupants at the conclusion of the accident in an effort to ascertain the probable locations of the victims inside the vehicle prior to the accident.
 {¶ 12} Veppert continued, noting that several facts were undisputed. Gregory Keene died at the scene of the accident. His body was found on the passenger's side of the vehicle with his arm pinned under the A-frame on the passenger's side. Megan McGinnis also died at the scene of the accident. Her body had been thrown clear of the vehicle and was found to the rear of the vehicle. Appellant's body was found near the driver's side of the vehicle. Veppert noted that there was some dispute as to whether appellant was completely outside the vehicle or whether his feet were still inside the vehicle, with his body dangling to the ground. Veppert stated, however, that this positioning did not effect his overall conclusions.
 {¶ 13} Veppert next testified in detail about the forces at play during the accident. The car originally struck a van, but Veppert testified that the impact there was minor and slowed the car very little. The vehicle then struck a tree stump with its right front bumper, causing the vehicle to rotate clockwise and causing the rear of the vehicle to leave the ground and begin to roll. The car then struck a telephone pole, ultimately coming to rest on its hood. Veppert continued, detailing the types of injuries he expected to find on the driver, the front seat passenger, and the rear passenger. He concluded that appellant's injuries were consistent with having been the driver, Gregory Keene's injuries were consistent with having been the front seat passenger, and Megan McGinnis' injuries were consistent with having been the rear passenger. Specifically, Veppert noted that in a crash such as this, he would expect that the front passenger would suffer serious trauma and death would likely result and that he would expect that the rear passenger would also experience serious trauma and that death would likely result. He further indicated that the safest position in the car was the driver's seat because it was the furthest from the impact site.
 {¶ 14} On cross-examination, appellant attempted to attack the validity of Veppert's conclusions. Specifically, appellant chose individual injuries from each of the victims and inquired as to whether they were consistent with having been in a different position than Veppert had concluded. Veppert answered that those injuries were consistent with different positions in the car. However, Veppert remained consistent in his testimony, indicating that one specific injury could not be used to reach a conclusion about the occupants' respective positions. Rather, he took into account the totality of the circumstances before reaching his conclusions.
 {¶ 15} Furthermore, on redirect examination, Veppert effectively refuted the alternative theories proposed by appellant. Appellant's theory effectively placed him in the rear seat, Gregory in the driver's seat, and Megan in the passenger's seat. Veppert, however, indicated that there were no forces at work on the car that would have caused Gregory Keene to have moved from one position in the car to his ultimate position in the front passenger's seat. Veppert specifically noted that both the passenger's seat and the driver's seat had been bent forward when the rear passenger was thrown forward. Those bent seats inhibited the ability of the occupants of the car to be thrown from side to side. Veppert further noted that it would have been nearly impossible with multiple bodies in the small vehicle for Gregory Keene's body to have passed by another of the occupants and landed in the passenger's side of the car. Additionally, Veppert noted that he did not believe that forces were applied to the car that would have caused the passenger to have been ejected as Megan had been.
 {¶ 16} Veppert's conclusions were bolstered by the testimony of Assistant Coroner John Daniels. Dr. Daniels testified that he had performed autopsies on numerous accident victims and that certain injuries were often occupant-specific. For example, Dr. Daniels explained that circular bruising can often be seen on the driver due to an impact with the steering wheel. Dr. Daniels noted that appellant had circular bruising which he believed was consistent with striking the steering wheel. During cross-examination, Dr. Daniels opined that neither Megan nor Gregory had circular bruising that was consistent with striking the steering wheel.
 {¶ 17} Dr. Daniels also noted that Megan had a circular bruise on her right side. He noted that the bruise matched the shape of the gear shift knob in the car. Veppert used this information to formulate that Megan had struck the gear shift while being thrown forward and through the windshield, bolstering his conclusion that she was the rear passenger. He noted that the location of the bruise, on Megan's right side, all but eliminated the possibility that she could have been the front passenger in the vehicle, as appellant had proposed.
 {¶ 18} Finally, the State presented evidence that Gregory's blood was found in the air vent on the right passenger side of the vehicle, another factor which supports the conclusions drawn by Veppert. Appellant responded to this evidence, arguing that it could have resulted after Gregory was thrown to that side of the vehicle from the driver's seat.
 {¶ 19} Effectively, appellant argues that the State's accident reconstruction expert's conclusions were incorrect. As noted, however, Veppert went into great detail about the likely injuries the occupants would have suffered and how those injuries appeared in the appellant, Gregory, and Megan. Furthermore, only appellant had injuries which were consistent with striking the steering wheel and only Megan had injuries which were consistent with striking the gear shift while being thrown forward. Finally, only appellant survived the accident, a fact which is consistent with Veppert's statement that the driver was in the safest position in the car.
 {¶ 20} Accordingly, the State presented expert testimony which was supported by forensic evidence that placed appellant as the driver of the car. Appellant does not dispute that the remaining elements of the crime were established. As such, this Court cannot say that appellant's convictions were against the manifest weight of the evidence. Having disposed of appellant's challenge to the weight of the evidence, we similarly dispose of his sufficiency challenge. See Roberts, supra. Appellant's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED IN ALLOWING THE STATE TO INTRODUCE TESTIMONIAL HEARSAY IN VIOLATION OF DEFENDANT'S CONFRONTATION CLAUSE RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE 1, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO." {¶ 21} In his second assignment of error, appellant contends the trial court erred when it refused to exclude portions of appellant's police interview because playing those portions of the CD violated his right of confrontation. This Court disagrees.
 {¶ 22} Initially, we note that the record in this matter does not contain the CD that was played in the trial court. Rather, the transcript that was filed herein contains a notice that none of the trial exhibits have been filed with this Court. While it was improper for the exhibits to have been retained by the trial court's official court reporter after appellant requested that they be filed in the appellate record, the burden of ensuring that the record on appeal is complete is placed on appellant. See App.R. 10. Given our resolution of this alleged error, however, the CD itself need not be considered and appellant has suffered no prejudice from the failure of his counsel to ensure that the CD was included in the record.
 {¶ 23} The Sixth Amendment to the U.S. Constitution provides in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" In support of his argument, appellant relies upon Crawford v.Washington (2004), 541 U.S. 36. In Crawford, the U.S. Supreme Court explained that the Confrontation Clause detailed the distinct approaches to be taken regarding statements which are testimonial or nontestimonial:
 "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law — as does [Ohio v. Roberts (1980), 448 U.S. 56], and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether. Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Id. at 68.
However, this Court need not determine whether those portions of the tape were testimonial as we find the Confrontation Clause jurisprudence contained in Crawford to be inapplicable to the case at hand.
 {¶ 24} The Crawford Court made clear that "[t]he [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Id. at 59, fn.9, citing Tennessee v. Street (1985), 471 U.S. 409, 414. See, also,State v. McClanahan, 9th Dist. No. 22277, 2005-Ohio-2975, overruled on other grounds by In re Ohio Criminal Sentencing Statutes Cases,109 Ohio St.3d 313, 2006-Ohio-2109. Herein, it is undisputed that the alleged statements contained in the tape were not presented for the truth of the matter asserted. Rather, the State asserted that the statements were necessarily included to give context to the answers given by appellant, answers which were clearly admissible. Furthermore, the trial court specifically instructed the jury multiple times as follows:
 "During this interview, you may hear questions by the police officer that involves evidence that has not been presented in this courtroom, and may indeed never be present in this courtroom. And while you may certainly consider the Defendant's answers and statements in this interview as evidence, you are instructed to treat the questions of the police as you would questions and statements of counsel in Court during this trial: That is, these questions in and of themselves are not evidence, and that, therefore, any content of the questions that is not separately supported by competent evidence brought before you in this courtroom is to be disregarded."
Accordingly, the State did not introduce the questions posed by the officer for the truth contained in those statements. In fact, under the instruction given by the trial court, the officer's questions were not introduced as evidence in any manner. Rather, the State played the officer's questions in order to place appellant's responses into context. As such, the officer's statements were not hearsay and the Confrontation Clause was not at issue. Appellant's second assignment of error is overruled.
 ASSIGNMENT OF ERROR III "THE TRIAL COURT ABUSED ITS DISCRETION IN IMPOSING A NON-MINIMUM SENTENCE ON APPELLANT, AS SUCH SENTENCE IS CONTRARY TO LAW AND NOT SUPPORTED BY THE RECORD." {¶ 25} In his final assignment of error, appellant argues that the trial court erred when it imposed sentence. Specifically, appellant alleges that his sentence is too severe. This Court disagrees.
 {¶ 26} State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856 altered this Court's standard of review for sentencing appeals. The Foster Court "concluded that trial courts have full discretion to impose a prison sentence within the statutory range" and "vest[ed] sentencing judges with full discretion" in sentencing. Foster at ¶ 100. Accordingly, postFoster, an appellate court reviews felony sentencing for an abuse of discretion. State v. Windham, 9th Dist. No. 05CA0033, 2006-Ohio-1544, at ¶ 11-12. An abuse of discretion is more than an error in judgment or law; it implies an attitude on the part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. Furthermore, when applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
 {¶ 27} Appellant was convicted of two second degree felonies. Accordingly, the trial court was permitted to sentence him from two to eight years in prison. R.C. 2929.14(A)(2). Appellant received only five years in prison.
 {¶ 28} In support of its sentence, the trial court detailed several factors. First, it took note that appellant had no prior record. However, the trial court also noted the aggravating factors involved in appellant's crimes.
 "[Appellant made] [o]ne bad choice after another to drink illegally, to drink illegally with people younger than him who were not even 18."
The trial court also noted that appellant admitted to being drunk on the night in question. The court continued on, noting that Veppert's testimony made clear that appellant was exceeding the speed limit when the accident occurred. In addition, appellant had struck and damaged another vehicle, prior to striking the stump; and the occupant of that vehicle suffered minor injuries.
 {¶ 29} Accordingly, the trial court listed numerous facts which demonstrated that the minimum sentence was an insufficient punishment. Appellant's actions ended two young lives, devastated two families, destroyed one vehicle, and damaged another. Accordingly, we cannot say that the trial court abused its discretion when it imposed a mid-range sentence of five years and ordered that each of appellant's sentences run concurrently. Appellant's third assignment of error is overruled.
 III. {¶ 30} Appellant's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). Court of Appeals of Ohio, Ninth Judicial District The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
SLABY, P. J. BOYLE, J. CONCUR