DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Jimmy L. Harmon, appeals from his conviction in the Summit County Court of Common Pleas. We affirm.
 I. {¶ 2} In January 2004, Mr. Harmon was indicted for two counts of trafficking in cocaine, in violation of R.C. 2925.03(A)(1), a third degree felony. These charges were based on incidents alleged to have occurred on February 3, 2004 and February 10, 2004.
 {¶ 3} On May 19, 2004, a supplemental indictment was issued that charged Mr. Harmon with one count of engaging in a pattern of corrupt activity, in violation of R.C. 2923.32(A)(1)/(B)(1), a first degree felony; one count of trafficking in cocaine, in violation of R.C.2925.03(A)(1), a second degree felony; and two counts of trafficking in cocaine, in violation of R.C. 2925.03(A)(1), a third degree felony. The supplemental indictment's charges were based on incidents occurring from July 1, 1997 through February 2004.
 {¶ 4} Mr. Harmon pled not guilty to the charges. A trial was held. A jury found Mr. Harmon guilty of trafficking in cocaine, in the amount of 26.61 grams, trafficking in cocaine, in the amount of 26.84 grams, and engaging in a pattern of corrupt activity with a criminal forfeiture specification. The trial court sentenced Mr. Harmon accordingly. This appeal followed.
 {¶ 5} Mr. Harmon timely appealed, asserting four assignments of error for review. We address Mr. Harmon's third and fourth assignments of error together, to facilitate review.
 II. A. First Assignment of Error
"Appellant's right to due process of law as guaranteed by the 4th, 5th,6th and 14th amendment to the United States Constitution as well as article 1 § 10 of the Ohio Constitution was effectively denied by his trial [counsel's] ineffective representation." [sic]
 {¶ 6} In his first assignment of error, Mr. Harmon contends that he was denied effective assistance of trial counsel, on four separate grounds: (1) counsel's failure to file a motion to suppress items obtained from the search of his home on February 13, 2004, the tapes produced by the police department regarding controlled buys, and money obtained from Mr. Harmon's person incident to his arrest; (2) counsel's conduct during trial that led to numerous reprimands and warnings of sanctions by the court; (3) counsel's failure to obtain discovery as it related to any other bad acts involving Mr. Harmon; and (4) the prosecution's attempt to investigate defense counsel during trial for the purposes of intimidation that allegedly caused defense counsel to concern himself with his own defense rather than focus all of his attention on the defense of Mr. Harmon.
 {¶ 7} A criminal defendant is guaranteed a right to the effective assistance of counsel by the Sixth Amendment. See McMann v. Richardson
(1970), 397 U.S. 759, 771, 25 L.Ed.2d 763. A two-step process is employed in determining whether the right to effective counsel has been violated:
"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland v. Washington (1984),466 U.S. 668, 687, 80 L.Ed.2d 674.
 {¶ 8} In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley
(1989), 42 Ohio St.3d 136, paragraph three of the syllabus. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. "Ultimately, the reviewing court must decide whether, in light of all the circumstances, the challenged act or omission fell outside the wide range of professionally competent assistance." State v. DeNardis (Dec. 29, 1993), 9th Dist. No. 2245, at *4.
 {¶ 9} This Court does not need to address these elements in any particular order; if we conclude that prejudice to the defendant did not result from defense counsel's actions or omissions, then we need not address whether counsel's actions or omissions were actually deficient. See Bradley, 42 Ohio St.3d at 143.
 {¶ 10} As to all four of his complaints, we observe that Mr. Harmon fails to discuss and demonstrate how he was prejudiced by each of these scenarios, i.e., how the result of the trial would have been different. See Bradley, 42 Ohio St.3d at paragraph three of the syllabus.
 {¶ 11} Based upon the foregoing, we cannot find that Mr. Harmon was denied effective assistance of trial counsel. Mr. Harmon's first assignment of error is overruled.
 B. Second Assignment of Error
"The trial court erred in allowing admission of prior bad acts of the appellant, over objection, this admission was unduly prejudicial to appellant during the course of his trial and denied appellant his rights as offered under the 4th, 5th, 6th and 14th amendment to the U.S. Constitution as well as article 1 § 10 of the Ohio Constituion." [sic]
 {¶ 12} In his second assignment of error, Mr. Harmon asserts that the trial court abused its discretion in admitting evidence of his prior controlled buys for which Mr. Harmon asserts he was not charged. Specifically, Mr. Harmon argues that the court impermissibly allowed the prosecution to attempt to illicit testimony from Kevin Reynolds regarding buys that were claimed to have occurred between Reynolds and Harmon before February 2004. Mr. Harmon maintains that the evidence of these prior incidents was not admitted for any of the exceptions specifically enumerated in Evid.R. 404(B). Mr. Harmon's contentions lack merit.
 {¶ 13} The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Ditzler (Mar. 28, 2001), 9th Dist. No. 00CA007604, at *5. Therefore, unless the trial court has abused its discretion and the appellant has been materially prejudiced by the admission, this Court will not interfere. Id. Abuse of discretion connotes more than simply an error in judgment; the court must have acted in an unreasonable, arbitrary, or unconscionable manner.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 14} Mr. Harmon's reliance on Evid.R. 404(B) is misplaced. Evid.R. 404(B) provides, "Evidence of other * * * acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 15} During re-direct examination, the prosecution asked Reynolds whether he had done any buys with Mr. Harmon prior to the buy done on February 3, 2004 for the police. Reynolds responded, "Yes, I did my own transactions with him." Defense counsel immediately objected, and at a side bar argued that the prosecution was attempting to elicit testimony about buys occurring before February 2004 and that this was prejudicial to Mr. Harmon. The prosecution explained, "[the supplemental] indictment goes from July 1, 1997 to February 13, 2004. Any prior acts are relevant in that indictment." The trial court overruled the defense's objection, reasoning that the evidence was appropriate. Therefore, acts occurring before February 2004 in this case were not "other acts" for the purposes of Evid.R. 404(B); they were directly relevant as the factual circumstances serving as the basis of the supplemental indictment in this case. Thus, any evidence regarding activities that occurred before February 2004 was clearly relevant and was therefore properly admissible. See Evid.R. 401 402.
 {¶ 16} Based upon the foregoing, we find that the trial court's admission of this testimony was reasonable. See Blakemore,5 Ohio St.3d at 219. Therefore, we conclude that the trial court did not abuse its discretion. Mr. Harmon's second assignment of error is overruled.
 C. Third Assignment of Error
"The trial court erred in overruling appellant's rule 29 motion for judgment of acquittal made at the close of the state's case. Sufficient evidence was not presented on each of the elements of the offenses such that the case could proceed to the jury in violation of appellant's right to due process and fair trial as guaranteed by the 4th, 5th, 6th and 14th
amendments to the United States Constitution, as well as article I, section 16 of the Ohio Constitution."
 Fourth Assignment of Error
"After reviewing the presented evidence at trial and evaluating appellant's arguments on appeal, it is clear that appellant's conviction for engaging in a pattern of corrupt activity went against the sufficiency and manifest weight of the presented evidence in violation of appellant's right to due process and fair trial as guaranteed by the 4th,5th, 6th and 14th amendments to the United States Constitution, as well as article I, section 16 of the Ohio constitution." [sic]
 {¶ 17} In his third assignment of error, Mr. Harmon asserts that the trial court erred in overruling his Crim.R. 29 motion for acquittal because the state failed to present sufficient evidence to support the charges of engaging in a pattern of corrupt activity and trafficking in cocaine. In his fourth assignment of error, Mr. Harmon re-asserts that his conviction for engaging in a pattern of corrupt activity is not supported by sufficient evidence, but also claims that it is against the manifest weight of the evidence.
 {¶ 18} Initially, we address Mr. Harmon's sufficiency claims. In order for a defendant to preserve the right to appeal the sufficiency of the evidence upon which his conviction is based, he must timely move for acquittal pursuant to Crim.R. 29 with the trial court. State v. Liggins
(Aug. 18, 1999), 9th Dist. No. 19362, at *3, citing State v. Pantic (May 26, 1999), 9th Dist. No. 18963, at *3-4. See, also, State v. Roe (1989),41 Ohio St.3d 18, 25. The defendant must also renew his motion for acquittal at the close of all evidence in order to preserve the issue for appeal. State v. Childress (June 29, 1988), 9th Dist. No. 4320, at *3-4, citing State v. Deboe (1977), 62 Ohio App.2d 192, 194. Absent such a renewal, the defendant waives any error "in the overruling of the motion for judgment of acquittal" unless the case is tried to the bench. Daytonv. Rogers (1979), 60 Ohio St.2d 162, 163, overruled on other grounds.
 {¶ 19} In the instant case, Mr. Harmon failed to renew his Crim.R. 29 motion for acquittal after presenting his defense. As such, Mr. Harmon has waived any error regarding the sufficiency of the evidence presented at trial, and consequently, he may not challenge the sufficiency of the evidence on appeal.
 {¶ 20} We now proceed to address Mr. Harmon's manifest weight argument. When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 21} R.C. 2923.32, engaging in a pattern of corrupt activity, states:
"(A)(1) No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity or the collection of an unlawful debt." R.C. 2923.32(A)(1).
Mr. Harmon argues that the prosecution failed to present evidence of his involvement in a criminal enterprise and of his engagement in a pattern of corrupt activity or enterprise on occasions other than those occurring in February 2004.
 {¶ 22} An "enterprise" is defined by R.C. Chapter 2923 to include "anyindividual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity * * * [, and] illicit as well as licit enterprises." (Emphasis added.) R.C. 2923.31(C).
 {¶ 23} Akron Police Department Detective Sean Brown testified that he began investigating Russell Goler for selling drugs in November 2003, and did a controlled buy on Goler for the first time in December of that year. Detective Brown testified that he observed Goler on a number of separate occasions at Mr. Harmon's residence; on one particular occasion in December 2003, he observed Goler enter the home and leave 15-20 minutes later. Additionally, Detective Brown testified that Mr. Harmon was seen at Goler's residence on several occasions through surveillance. During one such incident on February 4, 2004, the police waited at Goler's residence to do a controlled buy. Per the instructions of their informant, they had to wait for the narcotics to arrive at the residence; Mr. Harmon arrived at the house while the officers waited for the buy to take place.
 {¶ 24} At trial, defense counsel elicited testimony from Reynolds, which revealed that he had previous dealings with Mr. Harmon. Reynolds testified that he made controlled buys with Mr. Harmon for the Akron Police in February 2004. However, when asked whether he had "made a deal" with Mr. Harmon before that time, Reynolds responded that he had "made buys for [him]self before [he] even made buys for the police," and "had bought dope from him way before that." This testimony was never refuted.
 {¶ 25} Reynolds further testified as to the controlled buys in February 2004. Specifically, Reynolds testified that he met Mr. Harmon on Exchange Street in Akron, Ohio and performed a buy. Reynolds also testified that on February 10, 2004, Mr. Harmon was waiting for someone to deliver the crack cocaine to him, and that they agreed to meet on Howard Street in Akron, Ohio. While Reynolds waited at the meeting place, he observed Goler drive by and go down Alfaretta Street. He testified that soon after, Mr. Harmon contacted him to inform him that he was heading up Alfaretta Street to meet him. Mr. Harmon arrived in a black car driven by another person, and sold Reynolds the drugs on Howard Street.
 {¶ 26} Akron police detective Kandy Shoaff of the Narcotics Unit testified that she participated in the investigation of both Goler and Mr. Harmon. Detective Shoaff testified that while monitoring Alfaretta Street on February 10, 2004, she observed Mr. Harmon exit the residence at 115 Alfaretta Street and get into a vehicle driven by Goler. Mr. Harmon remained in the vehicle for several minutes, then exited the vehicle. Shoaff observed Mr. Harmon get into the black car that drove up, and the vehicle drove off.
 {¶ 27} Detective Brian Callahan of the Akron Police Narcotics Unit testified that when Mr. Harmon was arrested on February 13, 2004, $6,995.00 was found on his person. He testified that a $50 bill found on Mr. Harmon matched a $50 bill used to buy drugs from Mr. Harmon on February 3, 2004, in that the bill had the same serial number. Additionally, Callahan testified that a review of calls between the phones of Mr. Harmon and Goler revealed that the two spoke a number of times on February 10, 2004, both before and after the buy occurred that day.
 {¶ 28} We find that the testimony establishes an association as well as participation in the criminal activity. See R.C. 2923.32(A)(1) 2923.31(C). Furthermore, Reynolds' testimony reveals that Mr. Harmon engaged in buys prior to February 2004. We note that Mr. Harmon does not explain to this Court why his conviction is against the manifest weight of the evidence, and does not point to any evidence in the record to support his position that it is against the manifest weight of the evidence.
 {¶ 29} Based upon our review of the record, we cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it convicted Mr. Harmon of engaging in a pattern of corrupt activity.Otten, 33 Ohio App.3d at 340. Therefore, we find that his conviction for this charge is not against the manifest weight of the evidence.
 {¶ 30} Mr. Harmon's third and fourth assignments of error are overruled.
 III. {¶ 31} Mr. Harmon's assignments of error are overruled. Mr. Harmon's conviction in the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, P.J. Moore, J. Concur.