DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Darnell Delaney, appeals various decisions of the Lorain County Court of Common Pleas. For the reasons set forth below, this Court dismisses case number 07CA009188. This Court affirms the trial court's decisions in case numbers 07CA009189 and 07CA009190. *Page 2 
 I. {¶ 2} This Court granted Delaney's motion to consolidate the following three cases on appeal: 07CA009188, 07CA009189, and 07CA009190. Delaney did not file a brief in case number 07CA009188. Therefore, case number 07CA009188 is dismissed. See App.R. 18(C).
 {¶ 3} Delaney filed separate appellate briefs for case numbers 07CA009189 and 07CA009190. This Court will discuss each of the appeals separately.
 II.
Case No. 07CA009189 {¶ 4} In the underlying action, Delaney was indicted by the Lorain County Grand Jury on one count of escape. The charge arose after Delaney was placed on post-release control and his whereabouts became unknown. Delaney filed a motion to dismiss the indictment on the basis that he was not notified that he would be placed on post-release control; therefore, he claimed that he could not be convicted of escape. The trial court denied Delaney's motion to dismiss. Delaney then withdrew his previously-entered plea of not guilty and entered a plea of no contest to the indictment. The trial court accepted Delaney's no contest plea, found him guilty of escape and sentenced him to two years incarceration. The court ordered this sentence to be served consecutively to case numbers *Page 3 
05CR067281 (07CA009190) and 06CR072501 (07CA009188). Delaney timely appealed the trial court's decision, setting forth one assignment of error for review.
 ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT'S MOTION TO DISMISS."
 {¶ 5} In his sole assignment of error, Delaney argues that the trial court erred in denying his motion to dismiss. As set forth more fully below, we find that Delaney failed to properly preserve this issue for our review.
 {¶ 6} When a defendant in a criminal action files a motion to dismiss that goes beyond the face of the indictment, he is, essentially, moving for summary judgment.
 "The Ohio Rules of Criminal Procedure, however, do not allow for `summary judgment' on an indictment prior to trial. State v. McNamee
(1984), 17 Ohio App.3d 175; Akron v. Davis (July 31, 1991), 9th Dist. No. 14989. Since [Appellant's] claim went beyond the face of the indictment, he could present his challenge only as a motion for acquittal at the close of the [S]tate's case. Crim.R. 29(A). As a general rule, `premature declarations,' such as that presented [in a pre-trial motion to dismiss], are strictly advisory and an improper exercise of judicial authority. Fortner v. Thomas (1970), 22 Ohio St.2d 13, 14[.]" State v. Varner (1991), 81 Ohio App.3d 85, 86.
 {¶ 7} Accordingly, where an appellant files a motion to dismiss an indictment on a factual basis prior to trial, such a motion is not properly before the trial court. State v. Rouse (Dec. 8, 1999), 9th Dist. No. 98CA0061. In the present matter, Delaney filed a motion to dismiss his indictment asserting that he was not properly placed on post-release control and, therefore, could not be convicted of *Page 4 
escape for failing to report to a parole officer. The basis of Delaney's motion to dismiss went beyond the face of the indictment. As such, he could present his challenge only as a motion for acquittal at the close of the State's case. Crim.R. 29(A); State v. Brandon (Nov. 24, 1993), 9th Dist. No. 16236, citing Varner, 81 Ohio App.3d at 86.
 {¶ 8} "Were we to recognize the validity of such a procedure, trial courts would soon be flooded with pretrial motions to dismiss alleging factual predicates in criminal cases." Varner, 81 Ohio App.3d at 86. By failing to present his argument as a Crim.R. 29 motion for acquittal at the close of the State's case, Delaney did not properly preserve this argument for appellate review. Id.
 {¶ 9} Accordingly, Delaney's sole assignment of error is overruled. Case No. 07CA009190
 {¶ 10} The following facts gave rise to the underlying action. On February 6, 2005, Johnny Boone, Delaney's cousin, picked him up at the South Park apartment complex. Jerry Vickers was also at the South Park apartment complex at that time. Mr. Vickers was at the apartment complex to pick up his girlfriend, Bambi Showalter. Marcus Newton and Sherrie Baker were also in Mr. Vickers' van.
 {¶ 11} When Boone arrived at the apartment complex, he and Delaney spoke with Delaney's mother, Lonnie Delaney. Ms. Delaney informed the two that someone had stolen from her. Upon hearing this, Boone began to fight with *Page 5 
Newton, a passenger in Vickers' van. Ms. Showalter was in the van at the time the two men began fighting, and she called Vickers who had stepped out of the van to speak to another individual at the complex. Vickers came to the van and began fighting with Boone. During the fight, Vickers heard Boone say "get my pistol." Vickers then heard a "pop" and turned around. Vickers saw Delaney running away. Boone and Delaney then fled the scene. Delaney was still in possession of the firearm when Boone dropped him off at his house.
 {¶ 12} Initially, the witnesses at the crime scene were uncooperative with the police investigation. Vickers and Ms. Showalter eventually cooperated. Vickers eventually identified Delaney as the person who shot him. Ms. Showalter also identified Delaney as the man who shot Vickers.
 {¶ 13} Boone was eventually brought into the Elyria Police Department for questioning. The police questioned Boone about Vickers' shooting. Subsequent to interviewing Boone, a warrant was issued for Delaney.
 {¶ 14} Delaney was indicted by the Lorain County Grand Jury on one count of felonious assault, a violation of R.C. 2903.11; and one count of attempted murder, a violation of R.C. 2923.02/2903.02. Each count contained a firearm specification. Delaney pled not guilty, and the matter proceeded to a jury trial. The jury found Delaney guilty on all counts. The trial court sentenced Delaney to a total term of imprisonment of eleven years on count two of the indictment and its accompanying firearm specification. At the State's election, no sentence was *Page 6 
imposed on count one of the indictment. The trial court ordered that the sentence be served consecutively to case numbers 06CR072405 (07CA008189) and 06CR072501 (07CA008188). Delaney timely appealed his convictions, setting forth two assignments of error for review.
 ASSIGNMENT OF ERROR I "THE VERDICT IN THIS CASE IS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO."
 {¶ 15} In his first assignment of error, Delaney argues that the evidence was insufficient to support his conviction and that his conviction was against the manifest weight of the evidence. Specifically, Delaney contends that the various witnesses who testified at trial gave contradictory and conflicting statements to the police during their investigation. In addition, Delaney argues that the State's witnesses had criminal records and various motives to tailor their testimony to gain favor with the State.
 {¶ 16} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citing State v. Thompkins (1997), 78 Ohio St.3d 380, 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence, *Page 7 
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 17} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.)State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 18} Delaney was convicted of felonious assault and attempted murder. R.C. 2903.11(A)(1)/(2) proscribes felonious assault and provides: "[n]o person shall knowingly * * * [c]ause serious physical harm to another or * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."
 {¶ 19} R.C. 2923.02(A)/2903.02(B) proscribe attempted murder and provide:
 {¶ 20} R.C. 2923.02
 "(A) No person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, *Page 8 
shall engage in conduct that, if successful, would constitute or result in the offense."
 {¶ 21} R.C. 2903.02
 "(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code.
 {¶ 22} Johnny Boone testified at trial. Boone recited his version of the events that took place at the South Park apartment complex on February 25, 2005, which resulted in Jerry Vickers' being shot in the back. Boone stated that he was involved in a fight with Marcus Newton when Vickers came on the scene and began fighting with him. Boone testified that his shoulder popped out of place, and he fell to the ground. Boone claimed that at that point, Vickers stated that he was going to go get a gun. Boone stated that he then heard a gun shot and saw Delaney in possession of a gun. Boone then testified that he and Delaney left the scene and he took Delaney home.
 {¶ 23} Vickers also testified at trial. Vickers gave the following version of the events that took place at the South Park apartment complex on February 6, 2005. Vickers went to the South Park apartment complex to pick up his girlfriend, Bambi Showalter. A woman named Sherrie and Marcus Newton rode with him to the complex. While Vickers was waiting for Bambi, he stepped out of the van to talk to a friend of his. When he returned to the van, Vickers began fighting with Boone. Delaney tried to help Boone, and Vickers hit him too. Vickers then heard *Page 9 
Boone tell Delaney to get his pistol. Vickers explained that the statement did not necessarily mean that the gun belonged to Boone, but rather that it only meant that Boone needed help. After Boone told Delaney to "get my pistol," Vickers heard a pop and turned around to see Delaney remove a gun from his pants. Vickers felt a "twinkle" in his back. Vickers denied ever stating that he was going to his vehicle to get a weapon.
 {¶ 24} Vickers stated that after he was shot, he went to Elyria Memorial Hospital and was transported by life flight to Metro General Hospital in Cleveland. Vickers testified that the doctors did not want to remove the bullet, but that he was still undergoing treatment at the time of trial.
 {¶ 25} Vickers explained that he initially refused to tell the police officers who shot him and that he did not allow Ms. Showalter to tell them who shot him either because he wanted to "settle" things with Boone and Delaney himself. Vickers also admitted lying when he testified at a hearing in May 2005 when he was asked who shot him. Vickers stated that he still felt the need to deal with Boone and Delaney on his own. Vickers testified that he decided to cooperate with law enforcement officials after the birth of his son in September 2005. At trial, Vickers identified Delaney as the person who shot him and maintained that his testimony regarding the events of February 6, 2005, was the truth.
 {¶ 26} Officer Cooley of the Elyria Police Department testified that he responded to a shots fired complaint at the South Park apartment complex on *Page 10 
February 6, 2005. Officer Cooley stated that he met with Vickers and observed his bullet wound. Officer Cooley testified that while on scene, he searched Vickers' van and a van belonging to Julia Showalter, Bambi Showalter's mother. Officer Cooley stated that no weapons were recovered from either van, but a bloody t-shirt, a bloody diaper, and a pair of eyeglasses were discovered outside Vickers' van.
 {¶ 27} Bambi Showalter gave the following testimony regarding the events that took place at the South Park apartment complex on February 6, 2005. Ms. Showalter stated that Vickers was her boyfriend and the father of her then unborn child. Ms. Showalter testified that, due to her pregnancy, she was craving breakfast food, and that Vickers came to the complex to pick her up and take her to breakfast.
 {¶ 28} When Ms. Showalter got into Vickers' van, Marcus Newton and a woman named Sherrie were in the van. Before they left the complex, Vickers exited the van to speak to someone he knew. While Vickers was talking to his friend, Delaney, Boone, and Delaney's mother approached the van and began beating on Newton. When Vickers returned to the van, he and Boone began fighting. When Vickers appeared to be getting the upperhand, Delaney jumped in to help Boone. Vickers then began fighting with both men and was in control when Boone told Delaney to "grab my pistol". Vickers then told Ms. Showalter that he had been shot and showed her the bullet hole in his back. Ms. Showalter *Page 11 
could not locate the keys to Vickers' van, so she called 911. An ambulance eventually transported Vickers to the hospital. Before going to the hospital, Vickers instructed Ms. Showalter not to tell anyone who shot him. Ms. Showalter testified that she eventually identified Boone and Delaney from a photo array assembled by the police and testified at Delaney's prior hearing. At the hearing, she identified Delaney as the person who shot Vickers.
 {¶ 29} During her testimony, Ms. Showalter acknowledged that she has a criminal record consisting of possession of cocaine, trafficking in marijuana, and unlawful sexual conduct.
 {¶ 30} Detective Larry Barbee of the Elyria Police Department also testified at Delaney's trial. Detective Barbee stated that he was paged to the South Park apartment complex on February 6, 2005, to investigate Vickers' shooting.
 {¶ 31} Detective Barbee stated that during the course of his investigation, he met with Vickers and Ms. Showalter. Detective Barbee stated that initially both Vickers and Ms. Showalter were uncooperative. Detective Barbee testified that while other officers canvassed the neighborhood around the complex where Vickers was shot, Delaney's name came up.
 {¶ 32} Detective Barbee also testified that a couple of days after the shooting, Vickers called his desk and said that one of the individuals involved in his shooting was at an Autozone. Vickers gave a description of the vehicle in which Boone was a passenger. Detective Barbee and other officers went to the *Page 12 
Autozone where they found Boone. Marijuana was found in the vehicle and Boone admitted to having marijuana on his person. Cocaine was also found in the vehicle and the driver admitted to possessing the cocaine. Boone was cited for possession of marijuana and taken to the police station for questioning regarding Vickers' shooting.
 {¶ 33} At the station, Boone admitted to being at the complex on February 6, 2005, and being involved in an altercation with Newton. Boone also admitted to taking money from Newton's pocket. However, Boone denied shooting Vickers.
 {¶ 34} Boone was charged with possession of marijuana. However, the police could not locate Newton so no further charges were filed against Boone. Detective Barbee testified that the decision not to file charges against Boone for the assault and possible robbery of Newton was not part of a deal with Boone in exchange for Boone's answers regarding Delaney's involvement in Vickers' shooting.
 {¶ 35} No witnesses were called on behalf of the defense.
 {¶ 36} After reviewing the record in its entirety, this Court cannot conclude that Delaney's convictions of felonious assault and attempted murder were against the manifest weight of the evidence. Accordingly, having found that Delaney's convictions were not against the manifest weight of the evidence, this Court need *Page 13 
not discuss further his challenge to the sufficiency of the evidence. Delaney's first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT ERRED IN ALLOWING THE STATE TO INTRODUCE TESTIMONIAL HEARSAY FROM DETECTIVE BARBEE IN VIOLATION OF DEFENDANT'S CONFRONTATION CLAUSE RIGHTS UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO."
 {¶ 37} In his second assignment of error, Delaney contends that the trial court erred when it admitted the testimony of Detective Barbee that unidentified members of the neighborhood had told police officers that Delaney was involved in Vickers' shooting. Delaney claims that without an opportunity to confront these out-of-court declarants he was deprived of his Sixth Amendment rights in violation of the rule announced in Crawford v. Washington (2004), 541 U.S. 36.
 {¶ 38} "The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Harmon, 9th Dist. No. 22399, 2005-Ohio-3631, at ¶ 13, citing State v. Ditzler (Mar. 28, 2001), 9th Dist. No. 00CA007604. "Therefore, unless the trial court has abused its discretion and the appellant has been materially prejudiced by the admission, this Court will not interfere." Harmon at ¶ 13. "Abuse of discretion connotes more than simply an error in judgment; the court must have acted in an unreasonable, arbitrary, or *Page 14 
unconscionable manner." Id. citing Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 39} The Confrontation Clause does not prohibit the introduction of all out-of-court testimonial statements by witnesses who are unavailable and have not been subject to confrontation. In Crawford, the Court stated that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Crawford at 59, fn. 9, citing Tennessee v.Street (1985), 471 U.S. 409, 414. This Court has affirmed the trial court's decision to allow the introduction of testimonial statements not subjected to prior confrontation where the testimony merely provided background information or a context for the investigation. See State v.Keene, 9th Dist. No. 06CA008880, 2006-Ohio-6676, at ¶ 24.
 {¶ 40} Delaney argues that Detective Barbee testified that unidentified members of the neighborhood had told police officers that Delaney was involved in Vickers' shooting. However, the record shows that Detective Barbee's actual testimony was that, during the investigation of Vickers' shooting, other officers were "canvassing" the neighborhood near the South Park apartment complex and Delaney's name "came up." Detective Barbee next explained what further actions the police took to complete their investigation. Detective Barbee testified that after the neighborhood was canvassed, the police assembled a photo array and attempted to show it to Vickers and Ms. Showalter. Detective Barbee stated that *Page 15 
eventually, Ms. Showalter identified Delaney as the person who shot Vickers from the photo array. Detective Barbee also testified that he interviewed Boone and asked about the shooting at the South Park complex. Detective Barbee stated that after he questioned Boone, the decision was made to issue a warrant for Delaney's arrest. After reviewing the record, it is clear that Detective Barbee's statement that Delaney's name came up during the investigation was not offered for the truth of the matter asserted — that Delaney shot Vickers. Instead, Detective Barbee's statement was introduced to explain how the investigation was conducted and how the decision was made to issue a warrant for Delaney. This type of testimony is permissible underCrawford. Id.
 {¶ 41} Based upon the foregoing, this Court finds that the trial court's admission of this testimony was reasonable. See Blakemore,5 Ohio St.3d at 219. Therefore, we conclude that the trial court did not abuse its discretion. Delaney's second assignment of error is overruled.
 III. {¶ 42} Delaney's appeal in case number 07CA009188 is dismissed. Delaney's assignment of error in case number 07CA009189 is overruled. In case number 07CA009890, Delaney's assignments of error are overruled. The decisions of the Lorain County Court of Common Pleas are affirmed.
Appeal dismissed in case number 07CA009188, Judgment affirmed in case number 07CA009189, Judgment affirmed in case number 07CA009190. *Page 16 
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellant.
 SLABY, J. DICKINSON, J., CONCUR *Page 1