[Cite as *State v. Myers*, 2012-Ohio-1820.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.    25737 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JAMES DAVID MYERS | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.    CR 10 07 1923 |

DECISION AND JOURNAL ENTRY

Dated: April 25, 2012

MOORE, Judge.

{¶1}    Appellant, James D. Myers, appeals from the judgment of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}    On the evening of July 1, 2010, A.Y., the victim in the underlying action, went to a local bar called DeeCob's. The appellant, James D. Myers, was at the bar at the same time. The victim testified that she returned home around midnight. From her bedroom, she heard a noise from a motor vehicle outside her house and found that Myers was stuck in a ditch. She assisted Myers in towing his vehicle from the ditch near her home, and then returned to her home. She subsequently heard a noise, and when she looked outside of her bedroom window, she observed Myers' vehicle in her driveway. She opened her gun safe, loaded her handgun, and fired a shot over the vehicle in an effort to "scare" him off. In response, Myers "peeled out" of her driveway. The victim then went to the bathroom to prepare for bed. When she returned, she

found Myers sitting on her bed. She testified that she dove for her gun and struggled with Myers, but that he subsequently took the gun from her and laughed at her. She testified that Myers repeatedly raped her at gunpoint with his mouth and fingers, forced her to consume cocaine, and held her against her will. She testified that she watched Myers leave early the next morning. Feeling unclean, she took a hot shower. She also stripped the sheets off of her bed and washed them because she wanted to erase the incident from her mind. She attempted to go about her normal routine. She testified that she did not immediately call the police because she was afraid that he might come back and hurt her. She also had sexual relations with her boyfriend in an attempt to "give [her]self back to him." She also testified that she returned home from church a couple of days later and found that her front door had been kicked in.

{¶3}   On July 3, 2010, Myers was stopped for a DUI in a driveway adjacent to the victim's home. The officer testified that he was "polite, and cordial, and cooperative." He was released from custody a few hours later. On July 4, 2010, the victim reported the rape to the police. Myers was questioned about the rape. Initially, he denied knowing the victim or ever being present in the victim's home.

{¶4}   At trial, Myers testified that he saw the victim at DeeCob's bar. He had purchased cocaine from an individual at the bar and planned to "whoop it up for the next four or five days over the holidays" and his birthday. Myers testified that he and the victim made plans to do cocaine together later that night. However, he kept his distance from her at the bar because she appeared to be with her boyfriend. In accordance with their plan, Myers followed the victim home later that evening. He backed into what he thought was a dead-end road, and ended up stuck in the pasture. The victim pulled his vehicle out of the pasture with her truck and instructed him to park on the other side of the house. The two proceeded to talk, drink beer, and

use cocaine. Myers denied ever seeing the victim naked or touching her. Evidence was introduced by the State revealing a DNA profile matching Myers on a cigarette lighter and a drinking glass.

{¶5} On July 27, 2010, Myers was charged with rape, kidnapping, and aggravated burglary. Each charge carried firearm specifications. Myers was also charged with having a weapon while under disability, menacing by stalking, and operating a vehicle under the influence of alcohol. On August 30, 2010, a supplemental indictment was filed and Myers was charged with two additional counts of rape, a sexually violent offender specification, a repeat violent offender specification, and corrupting another with drugs.

{¶6} On September 27, 2010, the case proceeded to a jury trial on all charges except the sexually violent offender specification. The trial court granted Myers' motion for acquittal with regard to the repeat violent offender specification. On October 1, 2010, the jury returned a verdict of guilty for all offenses considered. On October 18, 2010, the jury returned a guilty verdict for the sexually violent predator charge. On November 23, 2010, Myers was sentenced to an indefinite term of life in prison with parole eligibility after 40 years.

{¶7} Myers timely filed a notice of appeal. He raises three assignments of error for our review. We have rearranged his assignments of error to facilitate our review.

II.

**ASSIGNMENT OF ERROR I**

EVIDENCE OF OTHER ACTS IS NOT ADMISSIBLE TO PROVE THE CHARACTER OF A PERSON IN ORDER TO PROVE CONFORMITY THEREWITH. IT MAY, HOWEVER, BE INTRODUCED TO PROVE MOTIVE, OPPORTUNITY, INTENT, PREPARATION, PLAN, KNOWLEDGE, IDENTITY, AND ABSENCE OF MISTAKE OR ACCIDENT. EVID.R. 404(B). THE TRIAL COURT COMMITTED REVERSIBLE ERROR AND/OR ABUSE OF DISCRETION IN ADMITTING EVIDENCE OF THE WISCONSIN CONVICTION OVER DEFENSE OBJECTIONS.

{¶8}  In his first assignment of error, Myers argues that the trial court abused its discretion in admitting the evidence of his Wisconsin conviction over defense objections.  We do not agree.

{¶9}  Trial courts possess broad discretion in determining the admissibility of evidence. *State v. Maurer*, 15 Ohio St.3d 239, 265 (1984), citing *State v. Hymore*, 9 Ohio St.2d 122, 128 (1967).  As such, this court will not overturn a trial court's evidentiary determination in the absence of an abuse of discretion that resulted in material prejudice to the defendant.  *State v. Ristich*, 9th Dist. No. 21701, 2004-Ohio-3086, ¶ 9.

{¶10}  Evidence of prior criminal acts, which are wholly independent of the crime for which a defendant is on trial, is generally inadmissible.  *State v. Watkins*, 9th Dist. No. 02CA008087, 2003-Ohio-1308, ¶ 7, citing *State v. Thompson*, 66 Ohio St.2d 496, 497 (1981).  Evid.R. 404(B) provides exceptions to this general rule.  However, the listed exceptions are not exclusive, and other acts evidence not fitting within the enumerated categories may be admissible so long as it is admitted for any proper purpose other than proving the defendant's propensity to act in conformity with a particular trait of his character.  *State v. Smith*, 49 Ohio St.3d 137, 140 (1990).

{¶11}  This Court has held that "[w]hen a prior conviction is an element of the charged offense, it may be admitted into evidence for the purpose of proving that element."  *State v. Halsell*, 9th Dist. No. 24464, 2009-Ohio-4166, ¶ 13, citing *State v. Thompson*, 9th Dist. No. 98CA007112, 2000 WL 235535, *4 (Mar. 1, 2000).  *See also State v. Blonski*, 125 Ohio App.3d 103, 108-9 (1997) (holding that when a prior offense is an element of the crime charged, the State must prove the prior crime).

{¶12} R.C. 2945.75(B)(1) explains that "[w]henever in any case it is necessary to prove a prior conviction, a certified copy of the entry of judgment in such prior conviction together with evidence sufficient to identify the defendant named in the entry as the offender in the case at bar, is sufficient to prove such prior conviction." "Facts surrounding a prior conviction that are beyond what is necessary pursuant to R.C. 2945.75, however, are admissible only to the extent permitted by Evid.R. 404(B)." *Halsell* at ¶ 13, citing *Thompson* at *4. Accordingly, even if a defendant's prior convictions are inadmissible under Evid.R. 404(B) and R.C. 2945.59, they may be admissible under R.C. 2945.75, so long as they are not offered "to prove the character of a person in order to show that he acted in conformity therewith." *Thompson* at *4; *State v. Swiergosz*, 6th Dist. Nos. L-10-1013, L-10-1052, 2012-Ohio-830, ¶ 23, quoting Evid.R. 404(B). *See also State v. Rivera*, 99 Ohio App.3d 325, 330-331 (11th Dist.1994) (concluding that there is no conflict between R.C. 2945.75 and Evid.R. 404(B) because the latter acknowledges "that evidence of other crimes may be admitted for purposes other than to prove that the defendant acted in conformity therewith.")

{¶13} On appeal, Myers initially argues that the trial court erred in admitting the testimony surrounding the prior conviction because it does not meet the strict requirements of R.C. 2945.59. Upon review of the record, it is apparent that the State sought to introduce a certified copy of the judgment of conviction in Wisconsin for "substantial battery with intent of bodily harm" to establish that Myers was a repeat violent offender and that he possessed a weapon while under disability. Thus, it was admissible under R.C. 2945.75(B)(1), even if it was inadmissible under Evid.R. 404(B) and R.C. 2945.59. *Thompson* at *4. *See also State v. Horne*, 9th Dist. No. 25238, 2011-Ohio-1901, ¶ 10 (holding that a trial court does not abuse its discretion in admitting testimony regarding the fact of a prior conviction when it is "relevant and

necessary to prov[e] a necessary element of the charge of having weapons while under disability.").

{¶14} The only testimony elicited from the officer on direct examination was that Myers was the defendant in that case, that the offense was committed on February 15, 1997, and that, in the officer's belief, the equivalent charge in Ohio would have been felonious assault. These facts were all necessary pursuant to R.C. 2945.75(B)(1). R.C. 2945.75(B) allows for a certified copy of the journal entry of judgment, and evidence sufficient to identify the defendant named in the entry as the offender in the case at bar. The facts pertaining to the previous conviction, beyond what is necessary to identify the defendant, are admissible only to the extent permitted by Evid.R. 404(B). *Halsell* at ¶ 13, citing *Thompson* at *4. In this case, the testimony surrounding the underlying facts of the earlier case was elicited on cross examination by defense counsel. Myers "cannot, on appeal, complain that the trial court erred in permitting the admission of prejudicial testimony which he elicited from the witness. 'The rule of "invited error," prohibits a party who induces error in the trial court from taking advantage of such error on appeal.'" *State v. Jackson*, 8th Dist. No. 86105, 2006-Ohio-174, ¶ 81, quoting *State v. Woodruff*, 10 Ohio App.3d 326, 327 (2d Dist.1983).

{¶15} Myers also argues that the trial court erred in failing to give a curative instruction. On September 27, 2010, the trial court granted Myers' motion for acquittal with regard to the repeat violent offender specification. Myers requested that he "be able to inform the jury of the repeat violent offender [specification] being dismissed." The trial court indicated that it would not be appropriate to do so, and Myers noted his objection for the record. He now argues that the trial court should have taken "steps to indicate to the jurors that evidence of the Wisconsin conviction could not, and should not, be considered in determining a verdict on the current

charges." However, as discussed above, the jury was required to consider the Wisconsin conviction in determining a verdict on the charge of having weapons under disability.

{¶16} In addition, because Myers did not request such an instruction, he has forfeited this issue for appellate review. "By forfeiting the issue for appeal, [Myers] has confined our analysis to an assertion of plain error." *State v. Gray*, 9th Dist. No. 08CA0057, 2009-Ohio-3165, ¶ 7, citing *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶ 23; Crim.R. 52(B). A notice of plain error is taken with the utmost caution and only to prevent a manifest miscarriage of justice. *State v. Bray*, 9th Dist. No. 03CA008241, 2004-Ohio-1067, ¶ 12. Therefore, we will not reverse the trial court decision unless it has been established that the trial court outcome clearly would have been different but for the alleged error. *Id.*

{¶17} Myers argues that the jury may have relied upon the testimony of his prior conviction and concluded that because he had committed a previous violent act that he must have done so here. We conclude that error, if any, did not constitute plain error. As noted in our analysis above, the details surrounding Myers' prior conviction were elicited on cross-examination by defense counsel. Moreover, there was substantial evidence introduced at trial upon which the jury could properly find Myers' guilty.

{¶18} The victim testified in great detail about the events the occurred at her home in the early morning hours of July 2, 2010. Her friend, Wayne Allen Blackburn testified that he saw Myers follow the victim from the bar, and he even called to warn her because he was concerned. The testimony of the victim's neighbor, Christine Jenkins, that she was awakened by the sounds of a revving engine around 1:30 in the morning on the day in question corroborates the victim's account of towing Myers out of the ditch. Jenkins witnessed a truck on the victim's property and recognized the victim's voice. About twenty minutes after the man's truck was

freed, she heard a "loud bang." Another neighbor, Josh Hako, testified that he heard a gunshot from across the street at the victim's house around 1:30 in the morning. He went to the window and could see a truck. Their testimony corroborates the victim's account of having shot over Myers' head into the meadow. Erika Bilyew also testified that she saw a red truck at the victim's home around 3:30 in the morning on the date in question. Valorie Prulhiere, the D.O.V.E. nurse, examined the victim after she came in complaining of a sexual assault. While the nurse conceded that her findings could have presented as a result of consensual sex, the physical examination also rendered results consistent with sexual assault. Jason LaFontaine corroborated a conversation with Myers about where he could obtain cocaine. The victim's boyfriend, Richard Stubbs, testified he was working in the pasture at the victim's house when he observed a red pickup truck with ladders drive by a few times. Myers was arrested near the victim's home and charged with a DUI on July 3, 2010. When Myers was first questioned about the attack, he denied knowing the victim or ever having been in her home. However, DNA evidence was recovered from a glass of water in the victim's home as well as a cigarette lighter, and it proved to be consistent with Myers. Myers later admitted to knowing the victim and being invited into her home, but denied any sexual activity.

{¶19} In light of the substantial amount of evidence against Myers at trial, he has failed to demonstrate that, but for admission of testimony regarding his prior conviction and the trial court's failure to give a limiting or curative instruction, the outcome of the trial would clearly have been otherwise. *See, e.g., State v. Dickinson*, 3d Dist. No. 11-08-08, 2009-Ohio-2099, ¶ 29; *State v. Simms*, 1st Dist. Nos. C 030138, C 030211, 2004-Ohio-652, ¶ 13. Accordingly, Myers' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT DENIED [MYERS] THE OPPORTUNITY TO CONFRONT THE WITNESSES AGAINST HIM AS GUARANTEED TO HIM BY THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

{¶20} In his second assignment of error, Myers argues that the trial court denied him the opportunity to confront the witnesses against him, specifically the victim, in violation of his sixth amendment rights. We disagree.

{¶21} Questions of the scope and effect of constitutional protections, such as the Sixth Amendment, are matters of law and therefore reviewed de novo. *See United States v. Wilmore*, 381 F.3d 868, 871 (9th Cir.2004). The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him[.]" The right of confrontation requires, whenever possible, testimony and cross-examination to occur at trial. *State v. Allen*, 8th Dist. No. 82556, 2004-Ohio-3111, ¶ 17. The United States Supreme Court held in *Crawford v. Washington*, 541 U.S. 36 (2004), that this procedural guarantee applies to both federal and state prosecutions.

{¶22} However, a determination regarding admissibility of evidence is within the sound discretion of the trial court. *State v. Evans*, 9th Dist. No. 07CA0057-M, 2008-Ohio-4772, ¶ 4, quoting *State v. Harmon*, 9th Dist. No. 22399, 2005-Ohio-3631, ¶ 13, citing *State v. Ditzler*, 9th Dist. No. 00CA007604, 2001 WL 298233, *5 (Mar. 28, 2001). Under the abuse of discretion standard, we must determine whether the trial court's decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.*, 66 Ohio St.3d 619, 621 (1993).

{¶23} Myers argues that the trial court erred in refusing to allow him to cross-examine the victim regarding evidence that the she "had made false allegations against men in her life on two previous occasions." At trial, Myers sought to cross-examine the victim regarding alleged prior accusations of domestic violence. The trial court sustained the prosecution's objection. Myers argued, outside the presence of the jury, that the victim had been married twice. During her 1999 divorce proceedings, she brought charges for domestic violence against her ex-husband. Myers alleges that "the Judge [in the 1999 case] determined that some of the injuries in his opinion were self-inflicted. Those charges were all dropped." During the victim's 2008 divorce proceedings, Myers alleged that the victim accused her ex-husband of domestic violence as well and that she filed a civil protection order against him. The proceedings were held in Akron Municipal Court, and were subsequently dismissed. Myers argued that this evidence goes directly to the credibility of the victim, as it establishes, if believed by the jury, that she has a history of accusing men of crimes they didn't commit. The trial court inquired as to what proof Myers had as a basis for cross examination. Specifically, it asked if he had certified copies of any court entries. He did not, but rather had essentially discovered this information through a newspaper article. The author of the article had a copy of the journal entry, and had communicated its contents to him.

{¶24} The State argued that the 1999 case was "so far out of time" that it was not clearly probative of truthfulness or untruthfulness. The State acknowledged that there was a prior domestic violence charge, and that it was dismissed. It argued that the 1999 case was irrelevant because no charges were filed.

{¶25} The trial court declined to permit inquiry into the 1999 case because Myers did not have "a certified copy of anything," it was "in a divorce format," and the court did not find a

reasonable basis for pursuing that line of questioning. Myers argued that he did not need to have a certified journal entry. Ultimately, the trial court disallowed inquiry into the 1999 divorce case, but allowed Myers to ask questions regarding the 2008 domestic violence matter because it was a criminal case.

{¶26} "Under Evid.R. 608(B), a defendant is permitted, in the court's discretion, to cross-examine a victim about prior false accusations if they are clearly probative of truthfulness or untruthfulness." *State v. Husseln*, 1st Dist. No. C-020155, 2003-Ohio-1369, ¶ 8 citing *State v. Boggs*, 63 Ohio St.3d 418 (1992) and *State v. Frederick*, 2d Dist. No. 18996, 2002 WL 360643 (Mar. 8, 2002). "In *Fredrick*, the defendant had been convicted of domestic violence for allegedly hitting his estranged wife on the side of the head. At trial, the defense had attempted to introduce evidence of a prior false accusation of domestic violence made by the victim against the defendant. Defense counsel attempted to show that the victim had engaged in a pattern of accusing the defendant of domestic violence, and that the cases had been dismissed or the police had refused to file charges after an investigation. The trial court refused to admit the evidence. The Second Appellate District held that the trial court erred in refusing to admit the evidence, stating that the trial court's discretion was not absolute and that the court had abused its discretion in refusing to allow defense counsel to question the victim about the prior false accusations. The appellate court held that if it could be shown that the victim had made false accusations in the past, 'it would have been highly probative of her truthfulness or untruthfulness with respect to the present charge of Domestic Violence.' *See State v. Fredrick*, supra, at ¶ 23. In addition, the appellate court held that evidence of the prior false accusations would also have been admissible under Evid.R. 616(A) to show the victim's bias, prejudice, interest, or motive for misrepresentation." *Husseln* at ¶ 8.

{¶27} Similarly, in *Husseln*, the trial court refused to admit evidence that the victim had previously filed five false domestic-violence charges against the defendant that had resulted in either dismissals or acquittals. The First District agreed with the reasoning in *Frederick* and held "that the trial court erred in refusing to admit evidence of the prior false domestic-violence charges because it was highly probative of whether the victim was telling the truth in this instance." *Husseln* at ¶ 9, citing Evid.R. 608(B). The court further held "that the evidence was admissible under Evid.R. 616(A) to show the victim's bias, prejudice, interest, or motive for misrepresentation." *Id.*

{¶28} However, in *State v. Messenger*, 3d Dist. No. 9-09-19, 2010-Ohio-479, the Third District concluded that the trial court did not err in refusing to admit evidence that the victim "fabricated *one* domestic violence charge *against her mother* more than two (2) years prior to the incident herein." *Id.* at ¶ 52. The Third District stressed that when "appellate courts have found an abuse of discretion when a trial court refused to admit testimony of prior false accusations under Evid.R. 608(B), those cases involved multiple false allegations against the defendant." *Id.* Furthermore, the appellant was able to raise doubts about the victim's credibility when the trial court allowed him to question her about a conviction for check fraud.

{¶29} We conclude that trial court did not err in refusing to allow Myers to cross-examine the victim regarding the 1999 incident. Myers initially stated that the victim "accused her ex-husband of domestic violence and also abuse. He was charged with that crime" but the charges were dropped. When the court inquired into a journal entry of conviction, Myers revealed that the case was a 1999 domestic relations case. The judge stated, "On the '99 case, we don't necessarily have a crime. I think we've just got a divorce from my impression of what you said." Myers agreed. The trial court ultimately concluded that it did not "find sufficient

probative value on the '99 divorce." It stated that "what happened in [the 1999] divorce case isn't relevant. It's old. [It] should not be inquired into." The court did, however, allow Myers to question the 2008 incident.

{¶30} Here, as in *Messenger*, the prior allegations were not against the defendant in the case at hand. Furthermore, the 1999 incident had occurred eleven years prior to the events in question. The passage of time has been held to diminish the probative value of such questioning. *See State v. Rainey*, 2d Dist. No. 23070, 2009-Ohio-5873, ¶ 20 (concluding that a trial court did not abuse its discretion in finding that an allegedly false accusation made eight years earlier was not "clearly probative" of the victim's untruthfulness). Finally, Myers was permitted to question the victim regarding the 2008 incident. As such, he was able to raise doubts about her credibility. *See Messenger* at ¶ 52.

{¶31} For the reasons set forth above, we conclude that the trial court did not abuse its discretion or violate the constitutional rights of Mr. Myers by disallowing inquiry into allegations regarding the 1999 domestic relations action against her ex-husband.

{¶32} Accordingly, Myers' second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL WHICH WAS PREJUDICIAL TO [MYERS].

{¶33} In his third assignment of error, Myers argues that his trial counsel provided ineffective assistance of counsel. We do not agree. This Court must analyze claims of ineffective assistance of counsel under a standard of objective reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989). Under this standard, a defendant must show (1) deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth

Amendment," and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" *Strickland*, 466 U.S. at 687. A defendant must demonstrate prejudice by showing that, but for counsel's errors, there is a reasonable possibility that the outcome of the trial would have been different. *Id*. at 694. In applying this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id*. at 689.

{¶34} The defendant has the burden of proof and must overcome the strong presumption that counsel's performance was adequate or that counsel's action might be sound trial strategy. *State v. Smith*, 17 Ohio St.3d 98, 100 (1985). "Ultimately, the reviewing court must decide whether, in light of all the circumstances, the challenged act or omission fell outside the wide range of professionally competent assistance." *State v. DeNardis*, 9th Dist. No. 2245, 1993 WL 548761, *2 (Dec. 29, 1993), citing *Strickland*, 466 U.S. at 689. Furthermore, an attorney properly licensed in Ohio is presumed competent. *State v. Lott*, 51 Ohio St.3d 160, 174 (1990).

{¶35} In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus. Further, an appellate court need not analyze both prongs of the Strickland test if it finds that Appellant failed to prove either. *State v. Ray*, 9th Dist. No. 22459, 2005-Ohio-4941, ¶ 10

{¶36} Myers initially argues that his trial counsel was ineffective because counsel failed to object promptly when the State elicited duplicative and repetitive testimony from the complaining witness. There are numerous legitimate strategic reasons why competent defense counsel might choose not to interrupt a rape victim's testimony with a barrage of objections. Among them is the risk that counsel may be seen as re-traumatizing a sympathetic victim, or

attempting to hide information that the jury would find helpful, either of which could reflect poorly on the defendant. "[T]his Court has consistently held that 'trial counsel's failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel.'" *State v. Bradford*, 9th Dist. No. 22441, 2005-Ohio-5804, ¶ 27, quoting *State v. Taylor*, 9th Dist. No. 01CA007945, 2002-Ohio-6992, ¶ 76. Myers argues that the failure to object "reinforced the recounted images in the minds of the jury and served no proper purpose." However, these are precisely the types of strategic decisions competent trial counsel must make, given their opportunity to assess the jurors on the panel, and the flow of evidence in the case. Myers does not argue, and this assertion does not demonstrate, that "were it not for counsel's errors, the result of the trial would have been different." *Bradley*, 42 Ohio St.3d at paragraph three of the syllabus. Accordingly, this argument is without merit.

{¶37} Next, Myers contends that his counsel was ineffective because he failed to subpoena witnesses for the defense that could have established Myers' whereabouts on Sunday morning when the victim's door was kicked in. This testimony would have repudiated the inference that he returned to the scene to continue to "stalk" the victim. We conclude that Myers has failed to demonstrate prejudice. He has not established "with references to the record who these witnesses are and, more importantly, how their testimony would have exonerated him. Without that, this court can only speculate, and speculation does not establish prejudice." *State v. Abdul*, 8th Dist. No. 90789, 2009-Ohio-6300, ¶ 7, citing *State v. Spencer*, 8th Dist. No. 69490, 1996 WL 304083 (June 17, 1996) and *State v. Thompson*, 8th Dist. No. 79334, 2002-Ohio-5957.

{¶38} Myers also argues that counsel was ineffective because counsel failed to take adequate steps before trial to establish that the Wisconsin conviction was not substantially similar to a second degree felony in Ohio, and thus the evidence of conviction would not have

been presented to the jury. However, Myers fails to consider the fact that the conviction would still have been presented to the jury to demonstrate that Myers committed the offense of having weapons under disability. Thus, he cannot demonstrate prejudice in trial counsel's failure to establish before trial that the Wisconsin conviction was not substantially similar.

{¶39} Finally, Myers argues that had defense counsel adequately prepared for trial, he would have been in a better position to provide proof of the complaining witness' prior false allegations. Thus, the court may have been more inclined to allow cross-examination of these accounts. However, as we concluded in the second assignment of error, because the prior allegations were against former husbands rather than the defendant, and because the 1999 incident occurred eleven years prior to the events in question, the probative value of such evidence had diminished. Therefore, even if counsel had produced additional evidence to support the allegations, the evidence would still not have been "clearly probative of truthfulness or untruthfulness" under Evid.R. 608(B). This argument is without merit.

{¶40} Accordingly, Myers' third assignment of error is overruled.

III.

{¶41} Myers' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CARLA MOORE
FOR THE COURT

CARR, J.
CONCURS.

DICKINSON, J.
CONCURRING.

{¶42} I concur in the majority's judgment and much of its opinion. In regard to Mr. Myers's first assignment of error, the State offered evidence regarding his Wisconsin conviction, not to prove his character as prohibited by Rule 404(B) of the Ohio Rules of Evidence, but in order to establish that he was a repeat violent offender and that he possessed a weapon while under disability. These are permissible "other purposes" under Rule 404(B), so Mr. Myers's first assignment of error is correctly overruled. I don't join in anything else the majority has written

about Rule 404(B) in regard to Mr. Myers's first assignment of error and specifically do not join in Paragraph 9, which is overbroad.

{¶43} In regard to Mr. Myers's second assignment of error, I don't join in the first sentence of Paragraph 23, which is overbroad. While I agree that whether Mr. Myers could properly cross-examine his victim about whether she "had made false allegations against men in her life on two previous occasions," was within the trial court's sound discretion, I disagree with the sweeping statement that "a determination regarding admissibility of evidence is within the sound discretion of the trial court."

{¶44} In regard to Mr. Myers's third assignment of error, I do not join in the implication found in Paragraph 37 that Mr. Myers could have succeeded on his assignment of error if he had provided the names of potential witnesses or proffered the testimony he believes would help his case. Neither would be appropriate on this direct appeal. The true problem with Mr. Myers's argument in this regard is that it is impossible to tell on direct review how witnesses would have testified if they had been called and what, if anything, his trial counsel knew about them. The proper remedy for ineffective assistance of counsel for failure to call witnesses is by way of a petition for post-conviction relief, not by an assignment of error on direct review.

APPEARANCES:

KAREN H. BROUSE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and GRETA L. JOHNSON, Assistant Prosecuting Attorney, for Appellee.